HELANE L. MORRISON (CA Bar No. 127752)
ROBERT MITCHELL (CA Bar No. 161354)
MARC J. FAGEL (CA Bar No. 154425)
KASHYA K. SHEI (CA Bar No. 173125)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 705-2500

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> DAVID ANDREW HILTON and STEPHEN SCOTT LOWBER, <br><br> Defendants. | Case No. C03-2511 <br><br> COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE AND STATUTORY RELIEF |

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## SUMMARY OF THE ACTION

1.  This case involves false financial reporting by former executives at Cutter & Buck Inc. ("Cutter" or the "Company"), a Seattle-based manufacturer of high-end sportswear. In the closing days of the fiscal year ended April 30, 2000, facing a potential revenue shortfall, Cutter recognized $5.7 million in revenue for products it shipped to three distributors. In fact, the purported distributors were acting only as warehouses for Cutter, and thus revenue should not have been recognized. Cutter retained full responsibility for finding customers to purchase the products, and David Andrew Hilton, then a Cutter sales vice president, had made side agreements with the distributors assuring them that they had no obligation to pay for the goods unless Cutter provided them with customers for the products.

**ORIGINAL**

1   Complaint, Case No.

03-CV-02511-CMP

2. Stephen Lowber, then Cutter's Chief Financial Officer, though not aware of the side arrangements struck by Hilton, was aware that the distributors did not have the financial ability to pay for the products they were supposedly purchasing from Cutter. Despite this, Lowber allowed Cutter to recognize revenue on the shipments.

3. In press releases and in filings with the Commission that were distributed to the public, Cutter announced revenue of $54.6 million for the fourth quarter of Fiscal 2000 and $152.5 million for the entire fiscal year. However, because these figures included approximately $5.7 million in improperly recognized revenue on the distributor sales, they overstated Cutter's true quarterly and annual revenue by 12% and 4%, respectively.

4. When Cutter failed to find enough customers to purchase the products from the three distributors, the distributors returned $3.8 million in unsold goods to Cutter. In order to conceal the improper distributor deals from the Company's auditors and shareholders, Lowber split the returns among several of Cutter's product lines on the Company's accounting records.

5. As a result of their conduct, Hilton and Lowber violated or aided and abetted Cutter's violations of the antifraud and other provisions of the federal securities laws. The Commission seeks a court order enjoining Hilton and Lowber from future violations of these provisions, imposing civil monetary penalties, and prohibiting Lowber from serving as an officer or director of any publicly traded company.

## JURISDICTION AND VENUE

6. The Commission brings this action pursuant to Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [U.S.C. § 78u(d)]. This Court has jurisdiction over this action pursuant to Section 27 of the Exchange Act [15 U.S.C. §§ 78aa].

7. Defendants made use of the means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange, in connection with the acts, practices, and courses of business and transactions alleged herein.

8. This district is an appropriate venue for this action under Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the transactions, acts, practices and courses of business constituting the violations alleged herein occurred within the Western District of Washington.

9. Assignment to the Court in Seattle is appropriate pursuant to Local Civil Rule 5(e)(1) because not all the defendants reside in the counties designated for assignment to the Court in Tacoma, nor did the claims arise in those counties.

### THE DEFENDANTS

10. David Andrew Hilton, age 46, resides in Parkville, Missouri. Hilton joined Cutter in 1997 as a salesman, and served as a divisional vice president for the corporate sales division during the relevant period. Hilton left Cutter in 2001, and currently works in sales at a privately-held company.

11. Stephen Scott Lowber, age 52, resides in Mill Creek, Washington. Lowber joined Cutter as Chief Financial Officer in 1997, and resigned in August 2002. Lowber is a certified public accountant.

### THE COMPANY

12. Cutter & Buck Inc. is a Washington corporation headquartered in Seattle, Washington. The Company designs and distributes upscale sportswear. The Company's common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act, and has been quoted on the Nasdaq Stock Market since the Company's 1995 initial public offering. Cutter operates on a fiscal calendar that ends on April 30.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

I. As A Public Company, Cutter Was Required To Accurately Report Its Financial Condition and Results To The Commission And To Investors.

13. In order to sell its common stock and other securities to members of the public and maintain public trading of its securities, Cutter was required to comply with Commission regulations designed to ensure that the Company's financial information was accurately recorded and disclosed to the investing public. Under these regulations, Cutter had a duty to, among other things: (a) make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of assets; (b) maintain a system of internal accounting controls sufficient to provide reasonable assurances that the Company's financial statements are prepared in conformity with generally accepted accounting principles (also known as "GAAP"); and (c) file with the

1  Commission on Form 10-K its annual financial statements that disclose its financial condition and
2  results of business operations.

3      14.    Under GAAP, a company may not recognize and report revenue for products it ships if
4  the seller has a continuing obligation to perform. Nor can revenue be recognized if the seller has no
5  reasonable expectation of being paid.

6      II.    **Defendants Caused Cutter To Overstate Its Revenue For The Quarter And Fiscal Year Ended April 30, 2000.**
7

8      15.    As it neared the close of its 2000 fiscal year (ended April 30, 2000), Cutter faced a
9  potential shortfall in revenue as its product sales declined. This shortfall was exacerbated by the
10 Company's practice of "early shipping." Since at least 1995, Cutter had a practice of shipping products
11 in advance of the shipment date requested by the customer. By 2000, the practice had grown
12 substantially, with the Company "early shipping" several million dollars in products each quarter. As a
13 consequence of essentially "borrowing" from the next quarter's sales, Cutter began each quarter with a
14 sales deficit. This was particularly problematic going into the fourth quarter of fiscal year 2000.

15     16.    During April 2000, Hilton, on behalf of Cutter, negotiated deals with three distributors
16 under which Cutter would ship them a total of $5.7 million in products. None of the three distributors
17 had the financial ability to pay for the volume of products Cutter shipped to them. Nor, under their
18 agreements with the Company, did the distributors have the ability or right to sell the products without
19 Cutter finding customers for them. In effect, these distributors acted essentially as warehouses for goods
20 that had been consigned to them by Cutter.

21     17.    Although the purchase orders executed by the distributors provided payment terms
22 requiring payment over a set period of time, Hilton verbally assured the distributors that they had no
23 obligation to pay for any of the goods until customers located by Cutter paid the distributors. Hilton
24 also provided a written "side letter" to one distributor expressly providing: "I promise you that you will
25 not be expected to pay for product until we have sufficiently sold the merchandise [and] you have been
26 paid for these invoices."

27     18.    At the very end of the month, in the last days of Cutter's fiscal year, Cutter shipped
28 approximately $5.7 million of goods to these distributors. Cutter recognized revenue for the sales. In

1  filings with the Commission and statements to the public, the Company reported revenue of $54.6 million for the fourth quarter and $152.5 million for the fiscal year.

19. Under GAAP, it was improper for Cutter to recognize revenue on the distributor shipments because Cutter had a continuing obligation to find customers for the products. Revenue recognition was also improper because the Company had no reasonable assurance that the distributors would pay for the products, and such payment was contingent on Cutter's ability to find customers for the goods. By improperly including the distributor deals in its reported revenue, Cutter overstated its revenue by approximately 12% for the fourth quarter and approximately 4% for the fiscal year.

20. By providing the special terms to the distributors in verbal and written side agreements, Hilton caused the Company to report to the public and the Commission financial results that were materially inflated. Hilton knew or was reckless in not knowing that his actions would cause Cutter to materially inflate its revenue.

21. Lowber, though not aware of the side arrangements struck by Hilton, was aware that the distributors did not have the financial ability to pay for the products they were supposedly purchasing from Cutter. Despite this, Lowber allowed Cutter to recognize revenue on the shipments.

22. Lowber signed the Company's Form 10-K for the fiscal year ended April 30, 2003. The Form 10-K included financial statements that were materially misleading because they included revenue from the improper distributor deals. Lowber knew or was reckless in not knowing that the financial statements filed with the Commission and disseminated to the public were materially misleading.

III. Lowber Later Concealed The Improper Distributor Transactions From Cutter's Auditors And Shareholders.

23. Cutter's sales force failed to deliver enough customers to the three distributors to fill the orders, and by late 2000 most of the inventory held by the distributors remained unsold. In accordance with the agreements they had made with Hilton, the distributors had paid Cutter only for the products successfully sold to third party customers.

24. By late 2000, Lowber knew that the distributors still held substantial inventory and had not paid Cutter for the unsold goods. Lowber concluded that the distributors were acting as warehouses and that Cutter had improperly recognized revenue on the April 2000 shipments to the distributors.

25. Rather than restate and correct the Company's financial statements for fiscal year 2000, as required, Lowber determined to accept returns of the unsold inventory from the distributors and reduce Cutter's revenue for fiscal year 2001. By so doing, Cutter did not have to publicly acknowledge that it had erroneously recorded the revenue in fiscal 2000. By the end of April 2001, the distributors returned approximately $3.8 million of unsold products to Cutter, and the Company credited the returns against fiscal 2001 sales.

26. The $5.7 million in revenue from the original sales to the distributors had been recognized in the accounts of Cutter's corporate sales division. However, in order to conceal the large return from the Company's board of directors and independent auditors, as well as its shareholders, Lowber directed that the returns be divided in the Company's accounting records among the accounts of multiple sales divisions. This required Cutter personnel to manually override the Company's accounting software program.

27. Lowber signed Cutter's Form 10-K for the fiscal year ended April 30, 2001. The Form 10-K included financial statements that were materially misleading because they reversed the returns out of fiscal 2001 revenue rather than restating the false 2000 financial results, and because the returns had been improperly spread over multiple sales divisions. Lowber knew or was reckless in not knowing that the financial statements filed with the Commission and disseminated to the public were materially misleading.

28. In addition, Lowber signed management representation letters to Cutter's independent auditors in calendar year 2001. These letters falsely stated, among other things, that all material transactions in fiscal years 2000 and 2001 were properly recorded in Cutter's accounting records, and that no goods had been shipped on consignment. Lowber knew or was reckless in not knowing that these statements to the Company's auditors were false and misleading.

IV. Subsequent Events

29. In or around late July 2002, following a change in management, Cutter's new management learned about the improper distributor transactions. The Company began an internal investigation in early August 2002. Lowber resigned shortly thereafter. On August 12, 2002, the

1  Company announced that it would restate its financial statements for fiscal years 2000 and 2001. The
2  announcement caused Cutter's stock price to drop from $4.02 to $3.44, or 14%, the following day.

3  30.  In October 2002, in its Form 10-K for the fiscal year ended April 30, 2002, the Company
4  restated its audited financial statements for fiscal years 2000 and 2001. The Company reported that the
5  restatement resulted from the improper recognition of revenue for shipments to distributors in April
6  2000, as well as from the Company's practice of shipping products in advance of the customer's
7  requested shipment date.

### FIRST CLAIM FOR RELIEF
(Against Defendants Hilton And Lowber)
Violations of Section 10(b) of the Exchange Act and Rule 10b-5.

10  31.  The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

11  32.  During the relevant period, Cutter and Lowber, directly or indirectly, in connection with
12  the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of
13  the mails, with scienter:

14  (a)  employed devices, schemes, or artifices to defraud,

15  (b)  made untrue statements of material facts or omitted to state material facts
16  necessary in order to make the statements made, in the light of the circumstances under which
17  they were made, not misleading, or

18  (c)  engaged in acts, practices, or courses of business which operated or would
19  operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

20  33.  Defendant Hilton knowingly provided substantial assistance to Cutter's violations of
21  Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §
22  240.10b-5].

23  34.  Defendant Lowber has violated and, unless restrained and enjoined, will continue to
24  violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 under the Exchange Act
25  [17 C.F.R. §240.10b-5].

26  35.  Defendant Hilton has aided and abetted, and unless restrained and enjoined, will
27  continue to violate and to aid and abet, violations of Section 10(b) of the Exchange Act [15 U.S.C. §
28  78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## SECOND CLAIM FOR RELIEF
(Against Defendants Hilton And Lowber)
Violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1

36. The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

37. Cutter filed with the Commission annual reports on Form 10-K for the fiscal years ended April 30, 2000, and April 30, 2001, that contained untrue statements of material fact and omitted to state material information required to be stated therein or necessary in order to make the required statements made, in the light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 under the Exchange Act [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

38. Defendants Hilton and Lowber knowingly provided substantial assistance to Cutter's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 under the Exchange Act [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

39. Defendants Hilton and Lowber aided and abetted, and unless restrained and enjoined, will continue to aid and abet, violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 under the Exchange Act [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

## THIRD CLAIM FOR RELIEF
(Against Defendant Lowber)
Violations of Section 13(b)(2)(A) of the Exchange Act

40. The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

41. Cutter, by engaging in the conduct described above, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the transactions and dispositions of the assets of the Company, in violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

42. Defendant Lowber knowingly provided substantial assistance to Cutter's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

43. Lowber aided and abetted, and unless restrained and enjoined, will continue to aid and abet, violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## FOURTH CLAIM FOR RELIEF
(Against Defendant Lowber)
Violations of Section 13(b)(2)(B) of the Exchange Act

44. The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

45. Cutter, by engaging in the conduct described above, failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable reassurances that:

   (a) transactions are executed in accordance with management's general or specific authorization,

   (b) transactions are recorded as necessary (i) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (ii) to maintain accountability for assets,

   (c) access to assets is permitted only in accordance with management's general or specific authorization; and

   (d) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences.

46. Defendant Lowber knowingly provided substantial assistance to Cutter's violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

47. Defendant Lowber aided and abetted, and unless restrained and enjoined, will continue to aid and abet, violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)].

## SIXTH CLAIM FOR RELIEF
(Against Defendant Lowber)
Violations of Section 13(b)(5) of the Exchange Act

48. The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

49. By engaging in the conduct described above, Lowber knowingly circumvented or knowingly failed to implement Cutter's system of internal accounting controls or knowingly falsified Cutter's books, records and accounts in violation of Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

50. Lowber has violated and, unless restrained and enjoined, will continue to violate Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

### SEVENTH CLAIM FOR RELIEF
(Against Defendant Lowber)
Violations of Rule 13b2-1 of the Exchange Act

51. The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

52. By engaging in the conduct described above, Lowber falsified or caused to be falsified Cutter's books, records and accounts in violation of Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

53. Lowber has violated and, unless restrained and enjoined, will continue to violate, Rule 13b2-1 under the Exchange Act [17 C.F.R. § 240.13b2-1].

### EIGHTH CLAIM FOR RELIEF
(Against Defendant Lowber)
Violations of Rule 13b2-2 of the Exchange Act

54. The Commission realleges and incorporates by reference Paragraphs 1 through 28 above.

55. By engaging in the conduct described above, and in connection with an examination of the financial statements of Cutter and the preparation and filing of statements and reports with the Commission, Lowber, directly or indirectly, made or caused to be made materially false or misleading statements to accountants and omitted to state, or caused another person to omit to state to accountants, material facts necessary in order to make statements made to the accountants, in light of the circumstances under which such statements were made, not misleading.

56. Lowber has violated and, unless restrained and enjoined, will continue to violate, Rule 13b2-2 under the Exchange Act [17 C.F.R. §240.13b2-2].

### PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court:

Enjoin Hilton from violating, directly or indirectly, Section 10(b) of the Exchange Act and Rule 10b-5 under the Exchange Act, and from aiding and abetting violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 under the Exchange Act;

Enjoin Lowber from violating, directly or indirectly, Sections 10(b) and 13(b)(5) of the Exchange Act and Rules 10b-5, 13b2-1 and 13b2-2 under the Exchange Act, and from aiding and abetting violations of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B) of the Exchange Act and Rules 12b-20 and 13a-1 under the Exchange Act;

1  Order Hilton and Lowber to pay civil penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

2  Bar Lowber from serving as an officer or director of any entity having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. §78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. §78o(d)];

3  Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court; and

4  Grant such other and further relief as this Court may determine to be just and necessary.

Dated: August 7, 2003

Respectfully submitted,

Helane L. Morrison
Robert L. Mitchell
Marc J. Fagel
Kashya K. Shei

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION